UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ADIRATH VIKRAM GUNDU and
ISHA DIDDY,

       Plaintiffs/Counter-Defendants,

                                     Case No. 24-cv-10249
v.                                   Honorable Linda V. Parker

SRINATH KALMADI and
ARTI UPADHYAYA,

       Defendants/Counter-Plaintiffs.
_____/

## OPINION AND ORDER DENYING MOTION TO EXTEND DATES AND GRANTING MOTION FOR SUMMARY JUDGMENT

This lawsuit arises from the parties' ownership and operation of two Indian-themed restaurants in Metropolitan Detroit.  It is presently before the Court on two motions: (1) A motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, filed by Plaintiffs/Counter-Defendants Adirath Vikram Gundu and Isha Diddy on November 27, 2024; and (2) a motion to extend dates filed by Defendants/Counter-Plaintiffs Srinath Kalmadi and Arti Upadhyaya on December 18, 2024.  The motion for summary judgment is fully briefed.  (ECF Nos. 20, 24, 26.)  A response was filed to the motion to extend dates, but no reply has been filed, even though the deadline to do so has long passed.  (ECF Nos. 25, 27.)  For the reasons set forth below, the Court is denying the motion to extend dates and granting the motion for summary judgment.

I.      **Factual and Procedural Background**

The parties were equal owners in Sai Krishna Enterprises LLC (the

"Company").  (ECF No. 11 at PageID.77 ¶¶ 2-3.)  Pursuant to an Operating

Agreement, which the parties executed on or around September 5, 2018, the

Company owned and operated two restaurants: one in Troy and the other in

Farmington Hills.  (*Id.* ¶ 4.)  Gundu and Diddy (hereafter "Plaintiffs"), who are

husband wife, ran the Farmington Hills location; Kalmadi and Updhyaya (hereafter

"Defendants"), who also are husband and wife, ran the Troy location.  (*Id.* at

PageID.78 ¶ 9.)

Toward the end of 2022 and into the beginning of 2023, Defendants

concluded that Plaintiffs were withdrawing more money than usual from the

Company account.  (ECF No. 24-4 at PageID.273 ¶¶ 6, 8.)  The video cameras in

the Farmington Hills location had been disabled, preventing Defendants from

monitoring the store, and Gundu would not let Kalmadi inside the store.  (*Id.* ¶¶ 7,

10.)  Defendants diverted credit card account processing and third-party delivery

company accounts, such as Grubhub and Uber Eats.  (*Id.* ¶ 8.)  Gundu refused to

provide Kalmadi with financial information.  (*Id.* ¶ 10.)  Defendants, therefore,

decided to buy out Plaintiffs' interests in the Company.

On May 1, 2023, Plaintiffs and Defendants executed a Membership Interest

Purchase Agreement ("Purchase Agreement") pursuant to which Plaintiffs sold

their interests in the Company to Defendants for $306,000.  (ECF No. 1 at

PageID.7-11.)  Defendants paid half of the sale price at the May 1 closing; the

remaining $153,000 was due within 60 days.  (ECF No. 1 at PageID.2 ¶¶ 7-8; ECF

No. 8 at PageID.29 ¶¶ 7-8.)  On May 1, 2023, Defendants also executed a

Promissory Note for the second installment, which became due and payable on

June 30, 2023.  (ECF No. 1 at PageID.13.)

Pursuant to the Purchase Agreement, "[a]ny non-store specific expenses"

would "be split equally between [Plaintiffs and Defendants] through Closing

including, but not limited to franchise fees and accounting fees."  (ECF No. 1 at

PageID.8 ¶ 2(c).)  Plaintiffs agreed to operate the Farmington Hills store through

the closing date in the ordinary course and to not remove any inventory or

equipment.  (*Id.* ¶ 2(e).)  Plaintiffs further agreed to deliver the financial records

for the Farmington Hills store and pay all sales taxes related to the revenues from

this location out of the sale proceeds.  (*Id.* ¶ 2(f).)  Plaintiffs agreed to deliver to

Defendants all keys, login IDs, and passwords relating to the operation of the

Farmington Hills location on the date of the closing.  (*Id.* at PageID.7 ¶ 1; *Id.* at

PageID.9 ¶ 5.)  The parties agreed in the Purchase Agreement that, in the event of

litigation arising out of the agreement or its performance, the prevailing party

would be entitled to reasonable attorney's fees, court costs, and all other expenses.

(*Id.* at PageID.9-10 ¶ 6(c).)

Gundu emailed all details regarding the business and the financials to Defendants and/or their counsel.  (ECF No. 20-4 at PageID.176-77 ¶ 6.)  Kalmadi did not receive them.  (ECF No. 24-4 at PageID.274 ¶ 11.)  Gundu also sent business records and financials to the Company's accountant, Aya Charara, to whom Defendants had access.  (ECF No. 20-4 at PageID.176-77 ¶ 6.)  Charara told Kalmadi at some unspecified date that she did not have permission to turn anything over to him and did not want to get involved.[1]  (ECF No. 24-4 at PageID.274 ¶ 11.)

Gundu provided login information and passwords for all accounts requested by Defendants or their counsel, except accounts linked to personal email, and subsequently attempted to work with Defendants through counsel to address outstanding issues.  (*Id.* at PageID.177 ¶ 9.)  According to Kalmadi, many of the IDs and passwords provided were incorrect.  (ECF No. 24-4 at PageID.274 ¶ 11.)  Kalmadi asserts that "much of the equipment that was to remain with the [Farmington Hills] store was missing" and that "[t]here was virtually no inventory[.]"  (*Id.* at PageID.273-74 ¶¶ 10-11.)  Gundu attests that all of the equipment from the Farmington Hills location was left at the store, sold well before closing, or provided to Defendants at the time of the closing.  (ECF No. 20-4 at PageID.177 ¶ 11.)

---

[1] Defendants provide an email from their counsel to Charara, dated October 23, 2024, seeking to schedule a telephone call to discuss the financial records.  (ECF No. 24-2 at PageID.253.)

Defendants failed to pay the second installment due under the Promissory Note when it became due on June 30, 2023.  (ECF No. 1 at PageID.3 ¶ 11; ECF No. 8 at PageID.29 ¶ 11.)  Plaintiffs therefore initiated this action on January 30, 2024, asserting a single breach of contract claim against Defendants for the amount owed, plus attorney's fees and costs.  (*See generally* ECF No. 1.)  Defendants filed a Counter-Complaint alleging breach of the Operating Agreement (Count I) and the Purchase Agreement (Count III).  (ECF No. 9.)  Defendants also assert a claim for an accounting to assess the revenue and expenditures of the Company prior to the Closing (Count II).  (*Id.*)

On April 16, 2024, this Court issued a Scheduling Order setting *inter alia* a discovery deadline of October 21, 2024, and a dispositive motion deadline of November 29, 2024.  (ECF No. 15.)  On the date discovery closed, Defendants' counsel, Tony Di Ponio, contacted the Court's case manager concerning a proposed motion to extend the scheduling order's dates.  (ECF No. 25-2 at PageID.305-06.)  Di Ponio indicated that Plaintiffs had sent discovery requests via email to him, but because his email account had been hacked, he did not become aware of the requests until October 4, 2024.  (*Id.*)

Plaintiffs' counsel, Adam Ratliff, sent a response email expressing Plaintiffs' opposition to the request to extend dates.  (*Id.* at PageID.303-04.)  Ratliff pointed out that Defendants had not conducted any of their own discovery before the

deadline to do so and had offered no explanation for their failure to engage in discovery to justify the requested extension.  (*Id*. at PageID.303-04.)  Ratliff also indicated that, based on Di Ponio's explanation for why Defendants had not responded to Plaintiffs' discovery requests, the parties had agreed that Defendants' responses would be served by October 11.  (*Id*.)  However, as of October 21, no responses had been received.  (*Id*.)  On October 22, the Court's case manager responded by email that if the parties failed to reach a stipulation regarding any extension of the scheduling order's dates, Defendants could file a motion.  (*Id*. at PageID.303.)

Almost two months later, on December 18, 2024, Defendants filed their pending motion to extend the discovery deadline to allow them to subpoena Charara for the Company's books and records.[2]  (ECF No. 25.)  Defendants cite Federal Rule of Civil Procedure 15 in support of their request (*id*.), although the Court assumes they meant Rule 16.  In the meantime, Defendants had filed their summary judgment motion on November 27, 2024, two days before the dispositive motion deadline.

---

[2] Defendants mention once in their motion that they seek an extension of discovery "for the parties' depositions to occur."  (ECF No. 25 at PageID.299.)  However, no depositions have ever been noticed, and they fail to elaborate on who they wish to depose.

## II.     Defendants' Motion to Extend Discovery

Federal Rule of Civil Procedure 16 provides that a scheduling order "may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).  "The primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements."  *Helena Agri-Enter., LLC v. Great Lakes Grain, LLC*, 988 F.3d 260, 272 (6th Cir. 2021) (quoting *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002)).  "Bound up in the good cause standard is an examination into the potential for prejudice to the non-moving party."  *Id*. at 272-73 (citing *Inge*, 281 F.3d at 625).

Defendants fail to demonstrate good cause to extend the discovery deadline. They certainly were not diligent in seeking discovery in this matter.  They waited until the date discovery closed to reach out to the Court about a potential motion to extend the scheduling order deadlines.  Despite receiving permission the following day to file their motion, Defendants waited another two months to do so.  They have offered no explanation for why they did not seek discovery earlier.[3]

---

[3] Defendants assert that Charara has said she needs authorization from Plaintiffs before sharing financial information with them.  (ECF No. 25 at PageID.297.) Notably, the email from defense counsel to Charara to discuss the financial records, which Defendants attached in support of their motion, was sent only on October 23, 2024.  (ECF No. 25-3.)  Plaintiffs had given Charara consent to provide the financial records to Defendants a year and a half earlier, on April 12, 2023.  (ECF No. 27-1 at PageID.359.)

In the meantime, Plaintiffs had moved for summary judgment as to all of the claims pending in this matter, Defendants filed a response brief without indicating that further discovery was needed to fully respond, and the dispositive motion deadline passed.  By the time Defendants filed their motion to extend dates, there were no remaining dates in the scheduling order to extend.  Finally, Defendants fail to identify how the discovery sought is relevant to their defenses or claims.  Instead, they state only that the information sought is needed to complete their 2023 tax returns.  (ECF No. 25 at PageID.298-99.)

In conclusion, because Defendants fail to show good cause for their failure to seek discovery before the deadline to do so expired, the Court is denying their motion to extend dates.

## III.   Plaintiffs' Summary Judgment Motion

Plaintiffs move for summary judgment on their claims against Defendants and on Defendants' counterclaims against them.

### A.   Standard of Review

Summary judgment pursuant to Rule 56 is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  After adequate time for discovery and upon motion, Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant has the initial burden of showing "the absence of a genuine issue of material fact."  *Id*. at 323.  Once the movant meets this burden, the "nonmoving party must come forward with specific facts showing that there is a genuine issue for trial."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted).  To demonstrate a genuine issue, the nonmoving party must present sufficient evidence upon which a jury could reasonably find for that party; a "scintilla of evidence" is insufficient.  *See Liberty Lobby*, 477 U.S. at 252.  The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See Liberty Lobby*, 477 U.S. at 255.

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by[] citing to particular parts of materials in the record . . .."  Fed. R. Civ. P. 56(c)(1).  The parties are required to designate with specificity the portions of the record such that the court can "readily identify the facts upon which the . . . party relies[.]"  *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir.

1989), *cert. denied* 494 U.S. 1091 (1990), 889 F.2d at 111.  It is not the court's

responsibility to construct a party's argument from the record or search out facts

from the record supporting those arguments.  *See, e.g., Street v. J.C. Bradford &*

*Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) (citing *Frito-Lay, Inc. v. Willoughby*,

863 F.2d 1029, 1034 (D.C. Cir. 1988)) ("the trial court no longer has a duty to

search the entire record to establish that it is bereft of a genuine issue of material

fact"); *see also InterRoyal Corp.*, 889 F.2d at 111 ("A district court is not required

to speculate on which portion of the record the nonmoving party relies, nor is it

obligated to wade through and search the entire record for some specific facts that

might support the nonmoving party's claim.").

## B.    Defendants' Alleged Breach of the Promissory Note

Plaintiffs seek summary judgment on their breach of contract claim against

Defendants, arguing that there is no genuine issue of material fact that Defendants

failed to pay the amount due under the Promissory Note.  In addition to the amount

due, Plaintiffs claim that they are entitled to an award of their attorney's fees and

costs under the express terms of the Purchase Agreement.

There is no genuine issue of material fact that Defendants failed to pay

Plaintiffs the $153,000 due on June 30, 2023, as required by the Promissory Note

and Purchase Agreement.  The payment was not contingent on any other term of

the Purchase Agreement or the superseded Operating Agreement.  Defendants also

do not dispute that the Purchase Agreement provides for an award of attorney's

fees and costs to the prevailing party in litigation arising from the agreement or its

performance. Defendants argue, however, that the right to setoff applies due to

Plaintiffs' alleged breaches of the parties' agreements.

"The right to setoff is a widely recognized common law right which allows

entities that owe each other money to apply their mutual debts against each other,

thereby avoiding 'the absurdity of making A pay B when B owes A.'" *In re*

*Gordon Sel-Way, Inc.*, 270 F.3d 280, 290 (6th Cir. 2001) (quoting *Citizens Bank of*

*Md. v. Strumpf*, 516 U.S. 16, 18 (1995)). "State substantive law applies to setoff

claims." *Laethem Equip. Co. v. Deere & Co.*, 485 F. App'x 39, 51 (6th Cir. 2012)

(citing *BP Expl. & Oil Co. v. Maint. Servs., Inc.*, 313 F.3d 936 (6th Cir. 2002)).

Generally, "absent a statutory mandate authorizing a setoff in a particular

circumstance, setoff is a matter in equity." *Walkers v. Farmers Ins. Exch.*, 572

N.W.2d 17, 19 (Mich. Ct. App. 1997) (citing 20 Am. Jur. 2d, Counterclaim,

Recoupment, & Setoff § 11).

"Setoff does not, as affirmative defenses do, *deny* that [the] plaintiff is

entitled to recover." *Ward v. Idsinga*, No. 302731, 2013 WL 4404246, at *19

(Mich. Ct. App. Aug. 15, 2013); *see also Skillnet Solutions, Inc. v. Ent. Publ'ns,*

*LLC*, No. 12-cv-12173, 2012 WL 6047514, at *9 (E.D. Mich. Dec. 5, 2012) (citing

20 Am. Jur. 2d, Counterclaim, Recoupment, & Setoff § 6); *Tworek v. Asset*

11

*Acceptance, LLC*, No. 09-cv-13373, 2010 WL 707365, at \*2 (E.D. Mich. Feb. 23, 2010). Thus, Defendants' assertion of this right does not undermine Plaintiffs' entitlement to summary judgment on Plaintiffs' breach of contract claim. Moreover, Defendants have no right to setoff until the parties are mutually indebted, and there are no mutual obligations at this moment. Defendants may claim a right to a setoff only if they prevail on their counterclaim and demonstrate their entitlement to damages.

Thus, the Court concludes that Plaintiffs are entitled to summary judgment on their claim alleging breach of the Purchase Agreement and Promissory Note. Pursuant to the express terms of the Purchase Agreement, they also are entitled to an award of the attorney's fees and costs incurred in this litigation.

## C.  Plaintiffs' Alleged Breaches & Defendants' Claim for an Accounting

In their Counter-Complaint and response to Plaintiffs' summary judgment motion, Defendants assert various violations by Plaintiffs of the parties' Operating Agreement and the subsequent Purchase Agreement. Plaintiffs contend that Defendants' breach of contract claim based on the Operating Agreement (Count I) is legally barred and, in any event, is not supported by any evidence. Plaintiffs also contend that no evidence supports Defendants' breach of contract claim based on the Purchase Agreement (Count III). Plaintiffs argue, as well, that Defendants do not allege or offer evidence showing that they suffered any damages as a result of

the alleged breaches of the agreements.  Finally, Plaintiffs maintain that the

accounting claim (Count II) fails.

By its express terms (*see* ECF No. 1 at PageID.9 ¶ 6(a)), the Purchase

Agreement superseded all prior agreements between the parties covering the same

subject (i.e., the Company and its store locations), including the Operating

Agreement.  A contract that expressly "supersedes" a prior agreement precludes a

breach of contract claim based on the old agreement.  *See Kelsey-Hayes Co. v.*

*Galtaco Redlaw Castings Corp.*, 749 F. Supp. 794, 796 (E.D. Mich. 1990) (citing

*Joseph v. Rottschafer*, 227 N.W. 784, 786 (Mich. 1929); *Culver v. Castro*, 338

N.W.2d 232, 234 (Mich. Ct. App. 1983)); *see also Adrian & Blissfield R.R. Co. v.*

*Dep't of Transp.*, No. 282710, 2009 WL 1693501, at *3 (Mich. Ct. App. June 16,

2009).

In response to Plaintiffs' summary judgment motion, Defendants make

various factual assertions as to how Plaintiffs' allegedly breached the Purchase

Agreement.  However, Defendants fail to cite record evidence to support the

majority of their assertions despite their obligation to do so.  Fed. R. Civ. P.

56(c)(1); *see also Matsushita Elec. Indus. Co.*, 475 U.S. at 587.  Defendants

"cannot merely rely on the allegations in their [unverified Counter-C]omplaint to

defeat summary judgment." *Tullis v. UMB Bank, N.A.*, 423 F. App'x 567, 570 (6th

Cir. 2011); *Zainalian v. Memphis Bd. of Educ.*, 3 F. App'x 429, 431 (6th Cir. 2001)

(concluding that the facts averred in the plaintiff's complaint "lacked the force and effect of an affidavit for purposes of responding to a motion for summary judgment" as it did not comply with the requirements of 28 U.S.C. § 1736) (citing *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993)).

Some of Defendants' factual allegations are supported by Kalmadi's affidavit, which Defendants offer in response to Plaintiffs' motion.  (*See* ECF No. 24-4.)  However, those facts are few to the extent they relate to a purported breach of the Purchase Agreement:

> •Many of the IDs and passwords he [presumably Gundu] gave me were not correct.  He refused to cooperate with me to give me access to the internet.
>
> •Much of the equipment that was to remain with the store was missing.  There was virtually no inventory, not even plates or silverware.  There was only one pan of food left in the restaurant.
>
> •Plaintiff Gundu never provided me with the financial records for the Farmington Hills operations after closing or the company's previous support records for its financial statements for prior years.  He continually told me that he provided this information to the company accountant, but the company accountant told me that she did not have permission to turn anything over to me.  She also told me that she did not want to get involved. . . .

(*Id*. at PageID.274 ¶ 11.)  For the following reasons, these assertions do not raise a genuine issue of fact material to Count III of Defendants' Counter-Complaint.

Kalmadi's affidavit does not create a genuine issue of material fact as to whether Gundu turned over login and password information, as required by the Purchase Agreement.  Kalmadi acknowledges that this was done.  While Kalmadi claims many IDs and passwords were not correct, he does not counter Gundu's assertion that Gundu tried to work with Defendants through counsel to address any outstanding issues, but was never provided any specifics of accounts Defendants could not access for which Plaintiffs had access.  (*See* ECF No. 20-4 at PageID.177 ¶ 9.)

Defendants offer no evidence from which a reasonable jury could find that Plaintiffs removed equipment from the Farmington Hills store after the Purchase Agreement was executed—or even close in time.  The equipment to be left at the Farmington Hills store is not specifically identified in the Purchase Agreement. Gundu provides that the equipment was either left at the store after closing, sold well before closing, or provided to Defendants at the time of closing.  Defendants offer no evidence to contradict these averments.

Kalmadi states that *he* was not provided "with the financial records for the Farmington Hills operations after closing or the company's previous supporting records for its financial statements for prior years."  (ECF No. 24-4 at PageID.274 ¶ 11.)  Notably, the Purchase Agreement only required Defendants to turn over financial records "for all of 2023 through the date of Closing."  (*See* ECF No. 1 at

PageID.8 ¶ 2(f).)  In any event, Kalmadi's assertion does not counter Gundu's claim that the financial information was sent to Upadhyaya and/or Defendants' attorney.  Moreover, the evidence reflects that the information was sent to the Company's accountant, Charara, and that Plaintiffs told Charara in an email, sent on April 12, 2023, that she had Plaintiffs' "full consent to discuss/prepare/present complete financial information related to Sai Krishna Enterprises LLC to [Defendants]."  (ECF No. 27-1 at PageID.359.)

Notably, while Plaintiffs told Charara on April 12, 2023, that she had their permission to provide the financial records to Defendants, it appears that Defendants waited a year and a half to contact Charara for the records.  Defendants then never sought to subpoena Charara or the records.  Had Defendants done so and not received them, they could have filed a motion to compel.

Thus, Defendants fail to present evidence to support their claim that Plaintiffs breached the terms of the Purchase Agreement.  Defendants also fail to respond to Plaintiffs' assertion that no damages have been alleged or supported by evidence with respect to any alleged breach.  Proof of damages is a required element of Defendants' breach of contract claims.  *See In re Brown*, 342 F.3d 620, 628 (6th Cir. 2003) (citation omitted); *Miller-Davis Co. v. Ahrens Constr., Inc.*, 848 N.W.2d 95, 104 (Mich. 2014) (citation omitted).  "It has long been the general rule of Michigan that in an action for breach of contract the burden is upon the plaintiff

16

to show damages." *Ferndale Labs., Inc. v. Schwarz Pharma, Inc.*, 123 F. App'x 641, 651 (6th Cir. 2005) (quoting *Benfield v. H.K. Porter Co.*, 137 N.W.2d 273, 274 (Mich. Ct. App. 1965) (citing *Callender v. Myers Regul. Co.*, 230 N.W. 154 (Mich. 1930)).

For these reasons, Plaintiffs also are entitled to summary judgment with respect to Defendants' breach of contract claims based on the Operating Agreement (Count I) and Purchase Agreement (Count III).  Plaintiffs also are entitled to summary judgment as to Defendants' accounting claim.  "To sustain a bill for an accounting there must be mutual demands, a series of transactions on one side, and payments on the other.  Where all the items are on one side, there can be no accounting." *Boyd v. Nelson Credit Ctrs., Inc.*, 348 N.W.2d 25, 27 (Mich. Ct. App. 1984) (quoting *Laubenbayer v. Rohde*, 133 N.W. 535, (Mich. 1911)).  "An accounting is unnecessary where discovery is sufficient to determine the amounts at issue." *Id.*

As Plaintiffs argue, Defendants have not alleged any of the elements necessary to state a claim for an accounting.  Nor have Defendants shown that an accounting is needed to remedy the issues alleged.  Moreover, Defendants do not respond to Plaintiffs' arguments and, therefore, have waived the issue. *See Indek Energy Servs., Inc. v. Consumers Energy Co.*, 250 F.3d 972, 979 (6th Cir. 2000)

17

(citations omitted) ("even issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived").

## IV.    Conclusion

In summary, Defendants fail to establish good cause to extend the deadlines in the scheduling order.  Their motion (ECF No. 25) is **DENIED**.  Plaintiffs establish that there are no genuine issues of material fact and that they are entitled to summary judgment as a matter of law with respect to their breach of contract claim and the claims alleged by Defendants in their Counter-Complaint.  Plaintiffs' motion for summary judgment (ECF No. 20) is, therefore, **GRANTED**.

Within fourteen (14) days of this Opinion and Order, Plaintiffs shall file a request for their attorney's fees and costs to which they are entitled under the Purchase Agreement, along with documentation supporting their request. Defendants may file any opposition to the amount of the requested fees and costs within seven (7) days of Plaintiffs' filing.

**SO ORDERED**.

s/ Linda V. Parker
LINDA  V. PARKER
U.S. DISTRICT JUDGE

Dated: August 4, 2025